UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

SPENCER SAVINGS BANK, S.L.A., and BARRY MINKIN,

    *Plaintiffs*,

v.

PHILIP A. VASTA, CATHERINE A. HIGGINS, JOHN H. MEREY, RICHARD J. LASHLEY, FREDERICK OZDOBA, FRANCESCA OZDOBA, ROBERT MITCHELL, ANDREW FISH, and HOWARD KENT,

    *Defendants*.

No. 21-cv-20485 (MEF)(JRA)

**OPINION and ORDER**

\*   \*   \*

For the purpose of this brief Opinion and Order, the Court assumes familiarity with the allegations and procedural history of this case.

\*   \*   \*

The case in a nutshell: a bank[1] came to believe that some of its members[2] were not eligible for membership but joined anyway, as part of an allegedly unlawful plan to take the bank public. See Amended Complaint (ECF 5) ("Complaint") ¶¶ 2-10. The bank and

---

[1] Spencer Savings Bank, S.L.A.

[2] Philip A. Vasta, Catherine A. Higgins, John H. Merey, Richard J. Lashley, Frederick Ozdoba, Francesca Ozdoba, Robert Mitchell, Andrew Fish, and Howard Kent.

one of its directors[3] sued the members for violating New Jersey law.[4]  See id. ¶¶ 99-124.

* * *

The Defendants now move for summary judgment on all counts, and the Plaintiffs have moved for partial summary judgment.  See Defendants' Motion for Summary Judgment (ECF 166-2) at 2; Plaintiffs' Motion for Summary Judgment (ECF 167-2) at 2.

The motions are denied without prejudice.

The reason: it is not clear the Court has subject-matter jurisdiction here.[5]

* * *

The Plaintiffs allege that there is jurisdiction under the diversity statute.  See Complaint ¶ 23 (citing 28 U.S.C. § 1332(a)).

In situations like this one, the diversity statute requires that "the matter in controversy exceeds the sum or value of $75,000[.]"  28 U.S.C. § 1332(a).

---

[3]  Barry Minkin.

[4]  Breach of the implied covenant of good faith and fair dealing (Count I), tortious interference (Count II), common law fraud (Count III), and civil conspiracy (Count IV).

[5]  Two things.  First, jurisdictional questions must be reached and resolved before merits question can be taken on.  See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94-95 (1998); Baymont Franchise Sys., Inc. v. Narnarayandev, LLC, 348 F.R.D. 220, 227 ("Jurisdiction is, as always, the first and fundamental question.") (cleaned up).  And merits questions are plainly raised by summary judgment motions, which aim to put an end to the case by making one side the bottom-line winner.  See Hubicki v. AFC Indus., Inc., 484 F.2d 519, 524 (3d Cir. 1973).  Second, the parties have not raised subject-matter jurisdiction questions.  But "courts have an independent obligation to satisfy themselves of [subject-matter] jurisdiction if it is in doubt."  Nesbit v. Gears Unlimited, Inc., 347 F.3d 72, 76-77 (3d Cir. 2003).  And for now, there is "doubt."

2

But there is "doubt," Nesbit v. Gears Unlimited, Inc., 347 F.3d 72, 77 (3d Cir. 2003), as to this.

To see the issue, look to the Complaint,[6] and ask: is the amount-in-controversy hurdle cleared?

Answering that question runs through a "reasonable reading of the value of the rights being litigated." Werwinski v. Ford Motor Co., 286 F.3d 661, 666 (3d Cir. 2002); see Angus v. Shiley Inc., 989 F.2d 142, 145 (3d Cir. 1993).

And "value" is measured in light of what the underlying substantive law makes potentially "recoverable" by the plaintiff. 4SIGHT Supply Chain Grp., LLC v. Gulitus, 730 F. Supp. 3d 127, 135-36 (D.N.J. 2024); see also Horton v. Liberty Mut. Ins. Co., 367 U.S. 348, 352-53 (1961); Werwinski, 286 F.3d at 667-68 (looking to underlying state law); 14B Charles A. Wright & Arthur R. Miller, Fed. Prac. & Proc. Juris. § 3702 (5th ed. 2025); 15A James Wm. Moore et al., Moore's Federal Practice --- Civil § 102.101 (2025).

Per the Complaint, two basic types of "rights [are] being litigated," Werwinski, 286 F.3d at 666, in this case.

Walk through these just below, to see if they measure up.

\*   \*   \*

The first: the bank's right not to be taken public. See Complaint ¶ 88.

Could a violation of that right potentially add up to a recovery of more than $75,000?

---

[6] The Complaint because "[t]he general federal rule is to decide the amount in controversy from the complaint itself," even on a motion for summary judgment. Angus v. Shiley Inc., 989 F.2d 142, 145 (3d Cir. 1993) (citing Horton v. Liberty Mut. Ins. Co., 367 U.S. 348, 353 (1961)); see also Steel Valley Auth. v. Union Switch & Signal Div., 809 F.2d 1006, 1010 (3d Cir. 1987).

3

As to that question, note that at the time the Complaint was filed[7] the bank had not been taken public.[8]  See id. ¶ 98.

This means there was a danger, from the Plaintiffs' perspective, of the bank going public.  But the risk had not yet materialized.

Danger that is only "in the air," Palsgraf v. Long Island R.R. Co., 248 N.Y. 339, 341 (1928), but that has not yet touched down and caused real-world injury --- that can be a serious thing.

But it is usually the stuff of government enforcement action. Not of a tort suit from a private party.  See generally Benjamin C. Zipursky, Rights, Wrongs, and Recourse in the Law of Torts, 51 Vand. L. Rev. 1, 91-92 (1998).

When a car is racing in and out of traffic, the police can intervene to enforce the rules of the road.  But that is generally only the work of the police.

If a private person is closely passed by the weaving car as it roars by, she cannot generally file a tort suit against the driver for the risk he created.  A tort suit must typically wait until the speeding car causes real-world harm, like a crash.[9]

---

[7]  That is the moment that counts.  See St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 292-93 (1938); Rosa v. Resol. Tr. Corp., 938 F.2d 383, 392 n.12 (3d Cir. 1991).

[8]  And it still has not.  See Plaintiffs' Statement of Material Facts (ECF 167-1) ¶ 1; Defendants' Response to the Plaintiffs' Statement of Material Facts (ECF 170-1) ¶ 1.

[9]  As suggested in the text, the typical division of labor is between government enforcers (who are sometimes empowered to sue before a real-world injury) and private plaintiffs (who typically are empowered to sue, at least via a tort cause of action, only after an injury).  The law sometimes moves away from this baseline.  One way to do that is for a legislature to create a financial incentive for private parties to step in --- even if they have not themselves been meaningfully injured. (Modern statutes that have incentive-payment aspects include, for example, the Telephone Consumer Protection Act.  See 47 U.S.C. § 227(b)(3).)  But note that under current standing law, that can sometimes create issues.  Private parties must be suing because they are injured, and in a "traditional" way.  See, e.g., TransUnion LLC v. Ramirez, 594 U.S. 413, 417 (2021).  But

4

All of that suggests a difficulty here.

The alleged "danger" of the bank going public has, as noted, not come to pass.  See Complaint ¶ 98.

So two jurisdictional questions.

First, are there any potentially "recoverable," 4SIGHT Supply Chain Grp., 730 F. Supp. 3d at 135, damages here?[10]  And second, might those tally up to $75,000?

As to the first question, the governing substantive law might allow for recovery based on diminishment in the value of the

---

suing to recover for a legislatively-created incentive payment can sometimes seem too far removed from suing for a "traditional" injury.  (And in explaining why, some courts have emphasized the way in which a private lawsuit for an incentive payment might be said to implicitly delegate the government's constitutional enforcement power to private litigants.  Cf. Joyce v. Jaguar Land Rover N. Am., LLC, 768 F. Supp. 3d 674, 682 (D.N.J. 2025) (collecting some relevant examples).  This is an "Article II" approach to standing.  See, e.g., Acheson Hotels, LLC v. Laufer, 144 S. Ct. 18, 26 (2023) (Thomas, J., concurring in the judgment) (citing Laufer v. Arpan LLC, 29 F.4th 1268, 1291 (11th Cir. 2021) (Newsom, J., concurring)); Tara Leigh Grove, Standing as an Article II Nondelegation Doctrine, 11 U. Pa. J. Const. L. 781, 783 (2009).  How might an Article II approach apply where, as here, the underlying body of substantive law is state law?  That is unclear.  After all, Article II might be taken as limiting Congress' power to delegate the federal executive branch's enforcement power to private plaintiffs.  But Article II does not impose limits on state legislatures' power to delegate state executive branch power.  Cf. Ann Woolhandler, State Separation of Powers and the Federal Courts, 31 Wm. & Mary Bill Rts. J. 633, 652-59 (2023).)

[10]  If there are no recoverable damages, that would be a jurisdictional problem.  And a merits problem, too.  The reason: some sort of damages are seemingly required as to each of the causes of action the Plaintiffs have put forward.  See Sons of Thunder, Inc. v. Borden, Inc., 148 N.J. 396, 420 (1997) (Count I, breach of the implied covenant of good faith and fair dealing); MacDougall v. Weichert, 144 N.J. 380, 404 (1996) (Count II, tortious interference); Allstate N.J. Ins. Co. v. Lajara, 222 N.J. 129, 147 (2015) (Count III, fraud); Banco Popular N. Am. v. Gandi, 184 N.J. 161, 177 (2005) (Count IV, conspiracy).

bank associated with an increased possibility that it can be taken public.

That would be surprising. As noted above, tort suits do not usually lie based on increased possibilities that harm or injury might come.

But one way or another, the Plaintiffs, who bear the burden, do not speak here to what the underlying substantive law says.

As to the second question, if the substantive law does indeed allow for a diminishment-in-value recovery, then the next question becomes: does any diminishment in this case potentially clear the $75,000 diversity-jurisdiction bar?

Maybe, maybe not. Again, nothing has been put before the Court that sheds meaningful light on this question.

And the Court cannot try to make a "value," Werwinski, 286 F.3d at 666, assessment based on everyday experience. Judges know from managing their dockets that, say, a wrongful death action in which a young adult was killed can easily spin off a more-than $75,000 recovery.

But the banking claims here are unusual. The Court does not have enough experience to draw on.[11]

And common sense is no help, either.

Indeed, it is not obvious that a bank's value would fall (let alone by how much) if it turns out that the bank can potentially be brought public, and therefore can be more readily sold to a broad range of buyers.

After all, limits on who can buy an asset sometimes enhance its value, and that is presumably the Plaintiffs' theory. But sometimes limits on who can buy an asset reduce its value. See generally Mai M. Daher & Ahmad K. Ismail, Debt Covenants &

---

[11] In many ways, this is an internal-governance dispute, of the sort typically handled by New Jersey or Delaware chancery courts. (The governance dispute has been pressed via a tort suit. As suggested throughout, that will require the parties to ask and answer some basic questions about the possibly recoverable damages associated with an alleged governance shortcoming that may not yet have had any clear real-world effect.)

Corporate Acquisitions, 53 J. Corp. Fin. 174 (2018); Norman E. Hutchison, Alastair S. Adair & Nicky Findlay, Impact of Covenant Strength on Property Pricing, 28 J. Prop. Rsch. 167 (2011); Robert C. Ellickson, Alternatives to Zoning: Covenants, Nuisance Rules, and Fines as Land Use Controls, 40 U. Chi. L. Rev. 681, 711–14 (1973).

And this means that widening the range of people who might be able to cheaply participate in buying the bank --- and creating the conditions for going public does just that --- might not bring the bank's value down, but push it up.  For now, it is hard to say which it is.

Bottom line: at the moment, the Court has no realistic way to get a solid handhold on the key question here, of whether a violation of an alleged right to not have the bank go public might potentially cause more than $75,000 in recoverable damages.[12]

*   *   *

Take now the rough value of the second sort of right being litigated here.  See generally Werwinski, 286 F.3d at 666.

The Complaint alleges that the Plaintiffs have been forced since 2004 to defend themselves in other cases --- state court actions brought by the Defendants and an alleged conspirator.  See Complaint ¶¶ 37, 87–88.

Those litigation costs, the Plaintiffs seem to suggest, nudge this case over the $75,000 diversity-jurisdiction threshold.

Arguments like this can sometimes work.

If, say, a court awarded attorneys' fees of $1 million and those were not paid --- suing for those fees would satisfy the diversity statute's amount-in-controversy requirement.  See Farmers Ins. Co. v. McClain, 603 F.2d 821, 823 (10th Cir. 1979); Westcor Land Title Ins. Co. v. ND Remy Assocs., LLC, 2021

---

[12]  And that means, too, that there is no way to assess the possible value of an injunction that might be entered here, see Complaint at 32–33 (seeking an injunction), to prevent the bank from going public.  See 4SIGHT Supply Chain Grp., 730 F. Supp. 3d at 130 n.3 (discussing valuation for diversity purposes of an injunction).

7

WL 2253523, at *2 (D.N.J. June 3, 2021); Peraton Gov't Commc'ns, Inc. v. Haw. Pac. Teleport L.P., 2021 WL 767854 (D. Haw. Feb. 26, 2021), aff'd, 2022 WL 3543342 (9th Cir. Aug. 18, 2022); Perez v. Foremost Ins. Co., 2018 WL 2473573, at *2 (W.D.N.Y. June 4, 2018); Majestic Int'l Pictures, Inc. v. Regal Video, Inc., 1989 WL 135876, at *2 (S.D.N.Y. Nov. 6, 1989); San Juan Hotel Corp. v. Greenberg, 502 F. Supp. 34, 35 (E.D.N.Y. 1980), aff'd, 646 F.2d 562 (2d Cir. 1980); Heavner v. State Auto Ins. Co. of Columbus, 340 F. Supp. 391, 393 (W.D. Va. 1972); see also 14B Wright & Miller, Fed. Prac. & Proc. Juris. § 3711.

But that does not appear to be this case.

The Plaintiffs do not allege that in previous cases they were awarded legal fees.  Only that they ran them up.

But for previously-incurred litigation fees to count toward the $75,000 jurisdictional amount, there must be some argument as to how they might possibly be "recoverable" here.  4SIGHT Supply Chain Grp., 730 F. Supp. 3d at 135.

But what is that argument?

The default "American rule" is that parties cannot recover their attorneys' fees.  See Lackey v. Stinnie, 145 S. Ct. 659, 666 (2025); Hensley v. Eckerhart, 461 U.S. 424, 429 (1983); Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 249 (1975); Arcambel v. Wiseman, 3 U.S. (3 Dall.) 306 (1796).

Given that, how can the Plaintiffs hope to get a recovery (and before that, jurisdiction) based on legal expenses from prior cases?  Does the American rule not cut off at the pass the idea that the Plaintiffs can get back here their old attorneys' fees?

There may well be solid answers to these questions.[13]

But to this point, answers have not been teed up by the Plaintiffs, who bear the burden of triggering this Court's jurisdiction.  See Hertz Corp. v. Friend, 559 U.S. 77, 96 (2010); McNutt v. Gen. Motors Acceptance Corp. of Indus., 298 U.S. 178, 189 (1936).

*   *   *

---

[13]  And related questions about incurred compliance costs.  See Complaint ¶¶ 4, 23, 28, 91, 103, 111.

To sum up:

The parties have filed summary judgment motions, but those are denied without prejudice, because the Court has "doubt," Nesbit, 347 F.3d at 77, as to its jurisdiction.

That must be addressed before the case can go forward, and will be on a schedule to be set by the United States Magistrate Judge.

*   *   *

IT IS on this 23rd day of July, 2025, so **ORDERED**.

                                                Michael E. Farbiarz, U.S.D.J.